## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-40126-01-RDR |
| | ) | |
| DIANA GUYTON, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT' S MOTION IN LIMINE WITH TRIAL MEMORANDUM

## MOTION IN LIMINE

Comes now Defendant and moves, pursuant to Federal Rule of Evidence 404(b), the Court to exclude all references to any "other acts." She also reserves the right to make additional motions to exclude "other acts" evidence during the trial.

### *Background*

As of this filing, the government has not provided notice of intent to introduce evidence of any juvenile adjudications, adult convictions, arrests or "other acts" in accordance with the General Order of Discovery and Scheduling. As a matter of fact, the government has said that it does not intend to introduce "other acts" evidence. Defendant reserves the right to object to the use of such evidence should the government provide late notice of its intent to introduce any such evidence.

Prior Convictions and Other Acts Evidence: Defendant has received discovery from the government which shows that at some unknown time official documents in the Office of

1

Civil Registry (Registro Civil) in Ojinaga, Chihuahua, Mexico were altered.

When Defendant's counsel received the above-referenced discovery, Defendant's counsel inquired of the government with respect to notice of how they would be using the "other acts" evidence, Defendant's counsel was informed that the government did not have any "other acts" evidence, and that the evidence of altered Mexican documents was "inextricably intertwined" with the charged offenses.

This motion is addressing the government's declared intention to use the documents which were altered in Mexico, whether the government attempts to use them as announced or whether it submits a potential late notice of intent to introduce evidence such "other acts" evidence under Rule 404(b).

Defendant has never been convicted of a crime, and, apart from the matters brought up in this case and a case Texas, both filed in connection with her March 26, 2004 entry into the United States of America from the United States of Mexico, has never been arrested.

## INTRODUCTION

### *Personal Background*

Defendant Diana Velia Guyton Chavira is a 41 year old American Hispanic female, having been born on June14, 1965 to Alicia Chavira and Samuel Guyton in Ojinaga, Chihuahua, Mexico.

At the time of her birth, Defendant's parents were not married. Her parents subsequently married and had three more children. Defendant's mother was a citizen of Mexico and her father a citizen of the United States.

When Defendant was approximately eight years old, her father had a heart attack and

applied for social security disability benefits.  Around the time that he began receiving said

benefits, he secured social security numbers for his children, including Defendant.  Samuel

Guyton died in October, 1977, when Defendant was 12 years old.  At the time of her husband's

death, Defendant's mother applied for and received Social Security survivor's benefits for

herself, as widow, and for each of Samuel's four children, including Diana.

After Diana grew up, she met and married a local politician, Miguel Giner.  Soon

thereafter Mr. Giner convinced Defendant to utilize her U. S. citizenship so that the family

could immigrate to the United States.

Diana then applied for and received a U. S. passport, evidence of the U. S. citizenship

she had inherited from her father Samuel Guyton.  With the U. S. passport, Defendant, together

with her husband Miguel Giner and their three children moved to Kansas, near the two brothers

who are closest in age to her.[1]  When Defendant and her family arrived in the Kansas, Defendant

submitted paperwork so that her husband Miguel Giner and her three children could get green

cards.  She also applied for and was granted a Certificate of Citizenship for herself.

When Defendant and her husband had lived in Great Bend, Kansas close to a year, the

family moved to Topeka.  About a month after moving to Topeka,  the couple's fourth child was

born and, since the best job Defendant could find was that of a waitress, she decided to go to

vocational school to study to be a Certified Nursing Assistant (CNA).

When Mr. Giner moved from the marital home and filed for divorce the first time (Case

---

[1]Two of Defendant's brothers,  Enrique Samuel Guyton and Oliver Ross Guyton were
living in Great Bend, Kansas, while her youngest brother Normando Rogelio Guyton was still
residing with their mother in Ojinaga, Chihuahua, Mexico.

No. SN98D110 filed on 02-06-1998), Defendant knew that she was going to have to further her education in order to be able to take care of the children, so she enrolled in the Licensed Practical Nurse program at Kaw Area Vocational Technical School.

In April of 1998, Mr. Giner stopped the divorce action and moved back to the marital home. (The divorce action was dismissed on 05-06-1998). By this time, Defendant had begun to study to become a Licensed Practical Nurse (LPN) at the Kaw Area Vocational Technical School. Around that time, Mr. Giner, having accrued sufficient time with his green card as the spouse of a U. S. citizen, applied for citizenship and was subsequently naturalized. About the same time that Mr. Giner received his Certificate of Naturalization, the couple's first three children received Certificates of Citizenship through their grandfather, Samuel Guyton.

Mr. Giner finished his Masters of Social Work (MSW) in May, 1999. Mr. Giner then announced to Defendant that he was going to start working on a doctorate in history because he wanted to be a history professor in a University. At that point, Defendant protested and reminded Mr. Giner that it was her turn to study because he already had two University degrees and she had none. Defendant's stand on the issue of education caused marital problems to come to the surface and so when Defendant finished LPN school in May, 2000, but before she could enroll in a University degree program, Mr. Giner filed for divorce the second time. (Case No. SN00D2155 filed on 11-7-2000; divorce granted 12-18-2001).

When Mr. Giner filed the second suit for divorce against Defendant, he claimed that the parties had only one child. Defendant counterclaimed, clarifying that the parties had four children and asking that Mr. Giner be required to pay child support for all four children.

Soon after the counterclaim was filed, Mr. Giner went to Mexico and started trying to

find ways to void the paternity acknowledgments he had made for his three children who had been born in Mexico.  He did this in order to circumvent Defendant's request that he pay child support for their benefit.  He also began writing to U. S. Government officials, particularly to the Immigration agencies, to complain that Defendant had defrauded the U. S. Government by coming here and subsequently petitioning for her husband (himself–the divorcing husband) and their three children who were born in Mexico.  According to Mr. Giner, the fraud that brought Defendant, him and their children to this country was that Defendant had lied about the identity of her father in order to get a U. S. Passport.

When Defendant and Mr. Giner were divorced, Mr. Giner was ordered to pay child support for all four of their children.  Mr. Giner appealed that decision with respect to the three oldest children.  The trial Judge's decision was upheld on appeal. (Mandate from Kansas Court of Appeals issued on January 27, 2003)

### *Involvement with government over migration issues*

Starting in June, 2003, Mr. Giner began to step up his campaign to have Defendant arrested, writing to U. S. Government officials, urging that Defendant be detained and charged with use of fraudulent documents in order to obtain U. S. Citizenship.  (See letter from Giner to Inspector General, Department of State, June 6, 2003, and letter from Giner to Chief of Border Patrol, Marfa, Texas Sector, June 12, 2003.)

In addition to complaining to U. S. Officials, Mr. Giner, using his political ties in Mexico, went to Chihuahua, Mexico and convinced the attorney general for the State of Chihuahua, Mexico to indict Defendant for alteration of official documents.

Knowing that his cohorts had filed charges in Chihuahua, Mr. Giner again wrote to the

Chief Border Patrol Agent on January 14, 2004 and the Senior Special Agent of ICE on January 29, 2004 to let them know that Ms. Guyton had been charged in Chihuahua, and alerted them that she would be attempting to re-enter the United States at the Presidio, Texas Port of Entry at the end of the children' s spring break.[2]

On Friday, March 26, 2004, when Defendant and the children had finished the Spring Break vacation, and she was crossing back into the United States at the Presidio, Texas Port of Entry, Defendant was detained by the Border Patrol, then arrested and jailed by the ICE officials.  On Monday, March 29, 2004, Defendant was charged in Federal Court with obtaining U. S. Citizenship by fraudulent means in violation of 18 U. S. C. 1425 (b). (Case No. P-04-916M-01; W. D. Texas)  On Wednesday, March 31, 2004, before the case went any further, the case was dismissed.

Nineteen months later, Defendant was indicted on November 2, 2005 in the instant case, for (1) possession of a false passport with intent to defraud the U. S. Government, in violation of 18 U. S. C. § 1028(a)(4), and (2) for use of a passport which had been received based on false information supplied in the application therefor, in violation of 18 U. S. C. § 1542.

Then, on her birthday, June 14, 2006, the grand jury handed down a superseding indictment, re-alleging the first two counts, and adding a third count of (3) making a false statement in an application for a Social Security card with the intent to deceive the

---

[2]Mr. Giner and Ms. Guyton have tangential contact because Mr. Giner regularly visits with the couple' s youngest child.  Through that contact, Mr. Giner learned that Defendant was going to take the children to Mexico to visit Defendant' s grandmother during the children' s 2004 spring break.  Mr. Giner had already provided the Border Patrol with the make, model and color of Ms. Guyton' s vehicle, as well as her Kansas license plate number.

Commissioner of Social Security as to her identity, in violation of 42 U. S. C. § 408(a)(6).

## ARGUMENT

### *Proof Required*

In order to establish the offense proscribed by 18 USC § 1028(a)(4), the government must prove each of the following elements beyond a reasonable doubt:

First: That the defendant knowingly possessed a false passport as described in the indictment; and

Second: That the defendant possessed the false passport with the intent that it be used to defraud the United States.

In order to establish the offense proscribed by 18 USC § 1542, the government must prove each of the following elements beyond a reasonable doubt:

First: The defendant knowingly used or attempted to use U. S. Passport No. 26840500; and

Second: The defendant had knowingly, falsely stated in the passport application therefor that she was the daughter of a U. S. Citizen.

In order to establish the offense proscribed by 42 USC § 408(a)(6), the government must prove each of the following elements beyond a reasonable doubt:

First: The defendant submitted an application for a Social Security card in August, 2001;

Second: That a statement in the application was false;

Third: That the falsity related to a material matter;

Fourth: That the defendant acted willfully and with knowledge of the falsity; and

Fifth: That the false statement was made in relation to a matter within the jurisdiction of

the Department of Social Security, as charged.

*Government's Evidence*

As previously indicated, Defendant received discovery from the government which shows that at some unknown time official documents in the Office of Civil Registry (Registro Civil) in Ojinaga, Chihuahua, Mexico were altered. Among the documents altered were the defendant's birth record and the marriage record of Defendant's parents. The government's attorney has indicated that he will have the former mayor of Ojinaga, Chihuahua, Mexico come to court to testify that Defendant used to work as his secretary, and that, in her position, she had access to original vital statistics record in the office of Civil Register. The government has also indicated that it would offer into evidence the altered records of Defendant birth as well as the altered records of Defendant's parent's marriage.

Stemming from the altered records, criminal charges were filed against Defendant by the prosecutor for the State of Chihuahua, Mexico on December 8, 2003. The government's attorney has indicated that he is also bringing witnesses to Court to talk about the origin of the charges in Mexico.

*The Evidence should be excluded pursuant to Rule 404(b)*

Defendant submits that the only purpose for offering any evidence concerning the altered Mexican documents is to insinuate that Defendant altered the documents and to ask that the jury infer from that inference that she is a bad person who would have the propensity to possess a false passport with intent to defraud, and furnish false information in official government applications in order to deceive officials of the government.

Defendant strenuously objects to introduction of such evidence and requests that the court exclude all evidence surrounding the alteration of documents in Mexico. The alteration of documents in Mexico at some unknown (unknowable?) time in the past has no probative value in connection with the issues in this case.

The issues in this case can be summarized as follows:

1. Did Defendant possess a false passport?

2. Did Defendant intend to defraud the US government with a false passport?

3. Did Defendant use or attempt to use a certain passport to enter the United States?

4. When answering question No.14 concerning the identity of her father, on the application for said passport did Defendant lie when she said that her father was Samuel Ross Guyton, born in Walnut Spring (sic) Texas?

5. Did Defendant supply a false place of birth when she filled out an application for a replacement social security card?

6. Did Defendant supply a false place of birth with the intent to deceive the Commissioner of Social Security as to her identity?

7. If, in fact, Defendant was born in Camargo, Chihuahua, Mexico and she stated on an application that she was born in Ojinaga, Chihuahua, Mexico, was such an assertion a material misstatement?

The altered documents, as previously stated are Defendant' s birth record and the marriage records of Defendant' s parents. The alterations made on Defendant' s birth record are as follows: The date of registration appears to have been altered to reflect that Defendant was

9

registered two months after her birth, rather than seven years after her birth. There were also alterations adjusting the ages of Defendant's mother and father.

The alterations made on the marriage record of Defendant's parents are as follows: The date of the marriage appears to have been altered to reflect that the Defendant's mother and father were married prior to defendant's birth. There were also alterations adjusting the ages of Defendant's mother and father.

There was no alteration made on either of those documents which would reflect a change in the identity of either of Defendant's parents, nor the place of birth of Defendant's father, nor the place of Defendant's birth. Both before and after alteration, the birth record identified Defendant's mother as Alicia Chavira, Defendant's father as Samuel Guyton, Defendant's paternal grandparents as Oliver Odell Guyton and Goldia P. Guyton and Defendant's maternal grandparents as Roselda Chavira and Ramón Chavira. The birth record, both before and after alteration reflects that Defendant was born in Ojinaga, Chihuahua, Mexico.

Defendant submits that the introduction of evidence concerning the altered documents, with no evidence as to who altered them, or when they were altered would be extremely prejudicial to Defendant.

Discovery seems to confirm that the documents which the Attorney General of Chihuahua used to accuse Defendant of altering official Mexican documents are the same ones that the U. S. Attorney appears to be desirous of introducing in evidence in this case. All appear to have Miguel Giner, Defendant's former husband, as their source. Defendant attaches the said documents to this memorandum. (Exhibits "D" and "E") Defendant also attaches a copy of the

10

application she made on April 20, 1992 for her U. S. Passport. (Exhibit "F")

***Evidentiary Issue***

Rule 404(b) of the Federal Rules of Evidence states the following with respect to the type of evidence we contemplate the government using:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) protects against the danger that the jury will either punish the defendant for offenses other than those charged, or convict the defendant when unsure of guilt because it is convinced that the defendant has a propensity to engage in illegal activity. *See United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) "[T]he rule is designed to avoid a danger that the jury will punish the defendant for offenses other than the offense charged, or at least will convict when unsure if guilty, because it is convinced the defendant is a bad man deserving of punishment."

Tenth Circuit case law instructs courts to consider four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Evidence is admitted for a proper purpose if allowed for one or more of the enumerated

purposes in Rule 404(b). It is relevant if it tends to prove or disprove one of the elements necessary to the charged offense. *See* Fed. R. Evid. 401. The danger of unfair prejudice resulting from the evidence's admission must not substantially outweigh the probative value of the evidence under the balancing test of Fed. R. Evid. 403. *See United States v. Tan*, 254 F.3d 1204, 1211n12 (10th Cir. 2001).

To be admissible, the bad act conduct must share similarity with the charged crime. *Zamora*, 222 F.3d at 762. Similarity may be demonstrated through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" *Zamora*, 222 F.3d at 762 (quoting *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997)).

The Tenth Circuit has identified a number of non-exclusive factors in assessing similarity: (1) whether the acts occurred closely in time. *See United States v. Olivo*, 80 F.3d 1466, 1468 (10th Cir. 1996), *United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989); (2) geographical proximity, *see Zamora*, 222 F.3d at 762n63; (3) whether the charged offense and the other acts share similar physical elements, *see id.*; *see also United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982); and (4) whether the charged offense and the other acts are part of a common scheme, *see United States v. Becker*, 230 F.3d 1224, 1232-33 (10th Cir. 2000) (drug defendant's prior convictions for methamphetamine *possession* and *distribution* not admissible under Rule 404(b) in part because the prior acts lacked a common scheme with the charged offense of methamphetamine *production*).

In *United States v. Rivera*, 837 F2d 906 (10th Cir) *reh' g granted on other grounds,* 847 F2d 660 (10th Cir. 1988), the Court said "[t]he use of other crimes evidence is not looked

upon favorably and its use must be narrowly circumscribed and limited."

In *U.S. v. Cardell,* 885 F2d 656 (10th Cir. 1989), the Court said:

Our circuit has outlined stringent requirements to ensure that the evidence in offered for a "proper purpose." Specifically, the government must show how the proffered evidence is relevant to an issue in the case by "articulat[ing] precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of t other acts." 766 F2d 1426, 1436 (10th Cir. 1985) *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 LEd. 2d 889 (1986). Moreover, the trial court must "specifically identify the purpose for which such evidence is offered and a broad statement merely invoking on restating Rule 404(b) will not suffice."

*Id.* at 671.

Attached Exhibit D is what appears to be an altered birth record for Defendant.  There appear to be alterations thereon which change the registration date, from August 29, 1972 (on which date Defendant would have been seven years old) to August 29, 1965 (at which time Defendant would have been 2 months old), and the ages of Defendant's parents.  Attached Exhibit E is the record of the marriage of Defendant's parents.  There appear to be alterations thereon which change the date of the marriage, from July 26, 1969 to May 26, 1965, and the ages of Defendant's parents.   Attached Exhibit F is the application for U. S. passport which was made and submitted by Defendant on April 20, 1992.

Attached Exhibit G is the application for Social Security card (SSA Form 5) which was furnished by Defendant on August 2, 2001.  The government's complaint about Exhibit G is that Defendant asserted in the application that she was born in Ojinaga, Chihuahua, Mexico.

The gravamen of Defendant's defense to Count 1 of the indictment is that she did not possess a false passport and that she had no intent to defraud the United States' government with the passport she had.  The gravamen of Defendant's defense to Count 2 of the indictment is

13

that her statement in the passport application----that Samuel Guyton, a U. S. Citizen, was her father-----was and is true to the best of her knowledge (using the same measure of confidence that any reader of this motion must use unless they have had occasion to have their paternity confirmed by DNA laboratory testing). The gravamen of Defendant's defense to Count 3 of the indictment is that when she stated that her birth city was Ojinaga, Chihuahua, Mexico, that statement was and is true to the best of her knowledge and belief (using the same measure of confidence that any reader of this motion must use when asserting the locus of their birth).

Defendant submits that the fact that certain documents in the office of Civil Registry in Ojinaga, Chihuahua, Mexico were altered at some undisclosed time contributes nothing to the jury's assessment of the elements of either of the three charged crimes. She also submits that any conduct related to the altered documents is too far removed in time and place[3] to satisfy the requirements of Rule 404(b).

The first *Huddleston* factor--proper purpose–is wholly absent here. The evidence that someone altered official documents in Mexico, has a tendency to show absolutely nothing about whether the passport which Defendant possessed in March, 2004 was false (not issued under the authority of the United States government).[4] With respect to the second charge, we submit that the altered documents tend to prove nothing about the truth or falsity of the statement contained in the application for her passport, that Samuel Guyton, an American citizen, was her father. Likewise, with respect to the third charge, we submit that the altered

---

[3]This assumes that the documents were altered in Ojinaga, Chihuahua, Mexico sometime prior to Defendant's April 20, 1992 passport application.

[4]We attach proposed jury instructions to this memorandum, see Exhibits A, B and C.

documents tend to prove nothing about the truth or falsity of the statement as to Defendant's

place of birth when she was filling out the application to get a replacement Social Security card

in her maiden name following the divorce from Mr. Giner. We submit that evidence of the

alteration of the official Mexican documents has no temporal, physical or geographical

similarity to any of the crimes charged in this indictment and should be rejected for lack of a

proper purpose under Rule 404(b).

The second *Huddleston* factor is relevance. This factor is also easily rejected. The

document alteration evidence is irrelevant under Rule 401, and should be rejected pursuant to

Rule 402 since it has no "tendency to make the existence of any fact that is of consequence to

the determination of this action more probable or less probable than it would be without the

evidence." Fed. R. Evid. 401. We submit that the date of registration and the age of Defendant's

parents on Defendant's birth record and the date of marriage and ages of the newly weds, on

Defendant's parents' marriage record has no tendency to make it more probable or less

probable that (1) the passport that Defendant possessed in March, 2004, was authentic or (2)

Defendant's father was an American citizen, or (3) Defendant listed the correct city of her birth

in the state of Chihuahua, Mexico, when she applied for a new Social Security card in her

maiden name following her divorce from Miguel Giner. *See United States v. Kline*, 922 F.2d

610, 611 (10th Cir. 1990). Thus, the evidence relating to altered Mexican documents clearly

sheds no light on a "fact . . . of consequence to the determination of the action." Fed. R. Evid.

401.

The third *Huddleston* factor requires the court to balance the probative value of the

evidence against its prejudicial effect under Fed. R. Evid. 403. Defendant submits that even if

the Court determines that the document alteration evidence is relevant, it should be excluded under Rule 403, which allows the trial court "to exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Galloway*, 937 F.2d 542, 548 (10th Cir. 1991).

Defendant suggests that the testimony about the remote document alterations is inconsequential to the real issues in the case and, its worth is overwhelmingly outweighed by its unfair prejudice to her.

## CONCLUSION

The only purpose for the introduction of Exhibits D and E would be to smear Defendant with the suggestion that since she lived and worked in Ojinaga previously and since her birth record and the marriage record of her parents were altered, it should be inferred that Defendant is the one who altered them in the Office of the Civil Register. The further purpose would be to ask the jury to speculate that if Defendant is the person who had done a "bad act" (alter official records) in the past, she had the propensity to do other bad acts such as those charged in this three count indictment.

Defendant submits that there is a remote and tenuous or non-existent link between the altered Mexican documents and any issues which have to be resolved in this case. Defendant further submits that the probative value of the altered Mexican documents, and the evidence surrounding how those documents became altered is substantially outweighed by the danger of unfair prejudice to her. For the foregoing reasons, Defendant asks that the Court exclude evidence about the alteration of documents or the charges filed in connection therewith, either

in Mexico or the United States of America, since the sole purpose of such evidence would be

to prove that Defendant has a propensity to commit the crimes with which she is charged.

S/ Richard E. Jones
Richard E. Jones

Richard E. Jones #07702
Attorney at Law
1503 SE Quincy
Topeka KS  66612
Voice: 785-235-3961
Facsimile: 785-235-3967
Email:  **joneslawoffice@sbcglobal.net**
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr. Greg Hough
Assistant United States Attorney
444 SE Quincy Room 290
Topeka KS 66683

s/Richard E. Jones

# Exhibit A

Defendant's Proposed Instruction for 18 USC 1028(a)(4).

# Exhibit B

Defendant' s Proposed Instruction for 18 USC 1542.

# Exhibit D

Defendant' s apparently altered birth record.

# Exhibit E

Defendant' s parents'  apparently altered marriage record.

# Exhibit F

Defendant' s passport application of April 19, 1992.  See specifically Question No. 14.

# Exhibit G

Defendant' s application for replacement Social Security card, as divorce proceedings were concluding in 2001. (Form SS-5)

# Exhibit C

Defendant' s Proposed Instruction for 42 USC 408(a)(6).